# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | CRIMINAL ACTION H-16-34 |
| | § | |
| | § | |
| JOHN CHRISTOPHER FERGUSON *in custody* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are a motion to suppress (Dkt. 50) and a motion to dismiss (Dkt. 51) filed by defendant John Christopher Ferguson.[1] Having considered the motions, responses, and applicable law, the court is of the opinion that both motions should be DENIED.

## I. BACKGROUND

This case arises from Ferguson's activity on a website known as Playpen. Dkt. 50 at 6. Playpen was "a global online forum through which registered users . . . advertised, distributed, and/or accessed illegal child pornography." Dkt. 55 at 3.

> Playpen existed as a hidden website on the Tor Network, also known as the dark web. Through sophisticated encryption, the Tor Network anonymizes and actively conceals identifying information about website users, including a user's true Internet Protocol ("IP") address. To access Playpen, it was necessary for users to know the website's address on the Tor Network. Users could not, for example, stumble upon Playpen while browsing the Internet. Once on the Playpen website, users logged in with dedicated usernames and passwords. Playpen offered users various forums for different child pornography topics, including "Incest" and "Toddlers." Inside each forum were discussion posts, images, and videos related to the particular topic.

---

[1] Ferguson also requests a hearing "only if the court deems one necessary or the government contests issue of fact that bear upon the legality of the search." Dkt. 50 at 1 n.1. Because the material facts are undisputed, Ferguson's request for a hearing is DENIED.

*United States v. Pawlak*, 237 F. Supp. 3d 460, 463–64 (N.D. Tex. 2017) (Fitzwater, J.).

In February 2015, the Federal Bureau of Investigation ("FBI") apprehended the administrator of Playpen and took control of the website. Dkt. 55 at 5; *see also* Dkt. 50 at 3. Although the FBI could view and document the substantial illicit activity occurring on Playpen, investigators could not identify Playpen users' IP addresses because of the Tor Network's anonymity. Dkt. 50 at 4. In order to determine the IP addresses and other information of Playpen users, the FBI applied for a search warrant before a magistrate judge in the Eastern District of Virginia. *Id.* at 5. The warrant, which was signed on February 20, 2015, allowed the FBI to use a network investigative technique ("NIT") to reveal information about Playpen users. *See id.* at 5–6. The NIT worked by placing "additional computer instructions" in the content Playpen would normally send to users. Dkt. 50-2 at 29. Then,

> [w]hen a user's computer successfully downloads those instructions from [Playpen], located in the Eastern District of Virginia, the instructions, which comprise the NIT, are designed to cause the user's "activating" computer to transmit certain information to a computer controlled by or known to the government.

*Id.*

Using the NIT, the FBI identified an IP address associated with Playpen user "joedirt." Dkt. 50 at 6. The government traced the IP address to Ferguson and determined that he accessed Playpen from his residence in Houston, Texas. *Id.* Using that information, "law enforcement obtained a search warrant in the Southern District of Texas for [Ferguson's] home." *Id.* at 7. The FBI conducted a forensic review of his computers and hard drives after he provided the password and "found approximately 1,061 videos and 13,157 images of young children engaged in 'sexually explicit conduct.'" *Id.*; Dkt. 55 at 7. Further, Ferguson was identified as the adult male engaging in the "sexually explicit conduct" with a prepubescent female in three of the videos. *Id.*

Ferguson moves to suppress "all fruits of the poisonous tree resulting from the illegal search of his home." Dkt. 50 at 1. Ferguson also moves to dismiss the indictment based on outrageous government conduct. Dkt. 51 at 1. The government opposes both motions. Dkts. 55, 56.

## II. LAW AND ANALYSIS

### A. Motion to Suppress

Ferguson moves to suppress the evidence resulting from the search of his home because the NIT warrant signed by the Eastern District of Virginia magistrate judge was not valid. Dkt. 50 at 1. In particular, Ferguson argues that the NIT warrant was invalid because: (1) it lacked particularity; (2) it violated the Federal Magistrates Act by violating Federal Rule of Criminal Procedure 41(b); and (3) the *Leon* good-faith exception does not apply. *Id.* at 2.

#### 1. *Particularity*

Ferguson argues that the NIT warrant lacked particularity because that single warrant allowed the search of 150,000 electronic devices, without specifying the location of a single one of them. Dkt. 50 at 12. According to Ferguson, "neither the [m]agistrate [j]udge nor the affiant could know what computers might be searched until after the search ha[d] already occurred." *Id.* at 14. Thus, the NIT warrant failed "to adequately describe the specific place to be searched." *Id.* The government responds that the warrant particularly described the computers that were searched as those whose users logged into Playpen by entering a username and password. Dkt. 55 at 7.

The Fourth Amendment "specifies only two matters that the warrant must particularly describe: the place to be searched and the persons or things to be seized." *United States v. Grubbs*, 547 U.S. 90, 97, 126 S. Ct. 1494 (2006) (internal quotations omitted). "The test for determining the adequacy of the description of the location to be searched is whether the description is sufficient 'to

3

enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.'" *United States v. Smith*, No. 4:15-CR-00467, 2016 U.S. Dist. LEXIS 182365, at *10 (S.D. Tex. Sept. 28, 2016) (quoting *United States v. Bonner*, 808 F.2d 864, 866 (1st Cir. 1986)).

The NIT warrant's "Place to be Searched" section provides the following:

> This warrant authorizes the use of a [NIT] to be deployed on the computer server described below, obtaining information described in Attachment B from the activating computers described below.
> The computer server is the server operating the Tor [N]etwork child pornography website referred to herein as [Playpen], as identified by its URL -upf45jv3bziuctml.onion- which will be located at a government facility in the Eastern District of Virginia.
> The activating computers are those of any user or administrator who logs into [Playpen] by entering a username or password. The government will not employ this [NIT] after 30 days after this warrant is authorized, without further authorization.

Dkt. 50-2 at 4. Attachment B, titled "Information to be Seized," authorized the seizure of seven specific categories of information, including "the 'activating' computer's actual IP address, and the date and time that the NIT determines what that IP address is." *Id.* at 5.

The court agrees with the government that the NIT warrant sufficiently described the place to be searched. The only computers that could be searched were those whose users logged into Playpen. Dkt. 50-2 at 4. Ferguson argues that the magistrate judge could not know what computers would be searched until after the search was completed. The court disagrees. The magistrate judge knew that only those computers whose users logged into Playpen would be searched—the computers that would contain evidence of violations of federal child pornography laws. *See Pawlak*, 237 F. Supp. 3d at 466–67. The warrant was not so expansive in its language to "constitute a virtual, all-encompassing dragnet" as Ferguson suggests. Dkt. 50 at 13 (quoting *United States v. Bridges*, 344

4

F.3d 1010, 1016 (9th Cir. 2003)). The warrant did not allow information to be seized from any computer anywhere in the world as Ferguson seems to argue. A computer could only be searched if it was used to access Playpen, giving the court probable cause that child pornography laws were violated. *See, e.g.*, *United States v. Matish*, 193 F. Supp. 3d 585, 609 (E.D. Va. 2016) ("[T]here existed a fair probability that anyone accessing Playpen possessed the intent to view and trade child pornography."). Further, that the warrant allowed for the search of 150,000 computers does not mean the warrant lacked particularity. When a warrant's scope encompasses "'any and all vehicles' at a scene, without naming any vehicle in particular, the probable cause on which it stands must be equally broad." *Id.* at 607 (quoting *United States v. Swift*, 720 F. Supp. 2d 1048, 1055 (E.D. Ark. 2010)). The sheer number of computers searched does not equate to a lack of particularity because each search was based on probable cause. Thus, the warrant satisfied the particularity requirement.

2. *Federal Magistrates Act[2] and Rule 41(b)*

District courts all over the country have been tasked with deciding similar issues as those before the court. Dkt. 55 at 18–22 (collecting cases). Almost always, the courts have declined to suppress evidence based on the NIT warrant. *See Pawlak*, 237 F. Supp. 3d at 470. Some courts have determined that the warrant complied with Rule 41(b). *See United States v. Anzalone*, 208 F. Supp. 3d 358, 370 (D. Mass. 2016) (collecting cases). The majority of courts have determined that even though the NIT warrant violated Rule 41(b), suppression of the evidence was not warranted. *Pawlak*, 237 F. Supp. 3d at 470. Finally, a very small minority of courts have suppressed the

---

[2]The Federal Magistrates Act provides, in relevant part, that magistrate judges shall have "within the district . . . all powers and duties conferred or imposed upon United States commissioners by law or by the Rules of Criminal Procedure for the United States District Courts." 28 U.S.C. § 636(a). Thus, violating Rule 41(b) also violates the Act.

5

evidence. *United States v. Croghan*, 209 F. Supp. 3d 1080 (S.D. Iowa 2016), *rev'd sub nom. United States v. Horton*, 863 F.3d 1041 (8th Cir. 2017); *United States v. Workman*, 205 F. Supp. 3d 1256 (D. Colo. 2016), *rev'd*, 863 F.3d 1313 (10th 2017); *United States v. Arterbury*, No. 15-cr-182, slip. op. (N.D. Okla. Apr. 25, 2016), *overruled by Workman*, 863 F.3d 1313; *United States v. Levin*, 186 F. Supp. 3d 26 (D. Mass), *vacated*, 847 F.3d 316 (1st Cir. 2017). Ferguson fails to cite a single one of these cases, and the court is unaware of any, that was not subsequently reversed, overruled, or vacated. Based on this precedent, the court will assume, without deciding, that the NIT warrant violated Rule 41(b). Even so, the court agrees with the majority of courts that the good-faith exception applies.

### 3. *Good-faith exception*

Even if the NIT warrant violated Rule 41(b), "it does not follow automatically that the search and seizure in this case should be suppressed. *Pawlak*, 237 F. Supp. 3d at 468. "The purpose of the exclusionary rule is to deter unlawful police conduct." *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006). But when evidence is obtained in "objectively reasonable good-faith reliance upon a search warrant," the rationale for the rule loses its force, and thus the rule is inapplicable. *See id.* (citations omitted). "Under the good-faith exception, evidence obtained during the execution of a warrant later determined to be deficient is admissible nonetheless, so long as the executing officers' reliance on the warrant was objectively reasonable and in good faith." *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003) (citing *United States v. Leon*, 468 U.S. 897, 921–25, 104 S. Ct. 3405 (1984)). "The 'good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Pope*, 467 F.3d at 917 (quoting *Leon*, 468 U.S. at 922 n.23)).

In the context of a Rule 41 violation, "where there is no constitutional violation nor prejudice in the sense that the search would likely not have occurred or been as abrasive or intrusive had Rule 41 been followed, suppression . . . is not appropriate if the officers concerned acted in the affirmative good faith belief that the warrant was valid and authorized their conduct." *United States v. Comstock*, 805 F.2d 1194, 1207 (5th Cir. 1986). "This is because the balance of interests inherent in an exclusionary rule analysis 'weighs much less heavily [when] the [Rule 41] violation is neither of constitutional dimensions nor intentional.'" *Pawlak*, 237 F. Supp. 3d at 469 (quoting *id.* at 1210).

Ferguson argues that the good-faith exception should not apply because: (1) the NIT warrant was unconstitutional; and (2) the government acted with reckless disregard of Rule 41. Dkt. 50 at 25–27. Regarding the constitutional question, Ferguson first argues that the warrant was unconstitutional because it lacked particularity. Dkt. 50 at 25. The court has already determined that the warrant was sufficiently particularized. *See supra* Section II.A.1. Second, he argues that the warrant was void *ab initio*, and all searches enacted upon it were thus unconstitutional warrantless searches. Dkt. 50 at 25 (citing *Croghan*, 209 F. Supp. 3d at 1090)). Similar to *Pawlak*, "[t]he court is unaware of any binding precedent in this circuit that restricts the [good-faith] exception in this manner, and it therefore declines to adopt this rule." 237 F. Supp. 3d at 469. Further,

> [t]he Fourth Amendment does not address the powers of magistrate judges or district judges, nor does it address whether judges' power extends beyond district boundaries. The Fourth Amendment simply requires, in pertinent part, that a warrant be issued by a "neutral magistrate." Thus[,] any more specific restrictions regarding who can issue a particular type of warrant are statutory or rule creations that do not implicate the Fourth Amendment.

7

*United States v. Perdue*, 237 F. Supp. 3d 471, 478 (N.D. Tex. 2017) (citing U.S. Const. amend. IV; *United States v. Deichert*, 232 F. Supp. 3d 772, 783 (E.D.N.C. 2017)). Accordingly, even if the NIT warrant violated Rule 41, it did not violate the Constitution.

Next, the court must consider whether the potential Rule 41(b) violation prejudiced Ferguson "in the sense that the search would likely not have occurred or been as abrasive or intrusive had Rule 41 been followed." *Comstock*, 805 F.2d at 1207. According to Ferguson, "[w]ithout the information obtained by the NIT, the FBI would not have known of [his] existence, much less have obtained probable cause to search his home in Texas." Dkt. 50 at 27. The court disagrees. Ferguson does not and cannot argue that the NIT warrant was not supported by probable cause. And because district judges are not limited by Rule 41(b) as magistrates are, a district judge in the Eastern District of Virginia would have been able to issue a warrant for the search of Ferguson's computer in Texas. *Pawlak*, 237 F. Supp. 3d at 469. Thus, the court "concludes that the Rule 41(b) violation was technical" and did not prejudice Ferguson in the manner contemplated by *Comstock*. *Id.*

Lastly, the court must determine "if the officers concerned acted in the affirmative good faith belief that the warrant was valid and authorized their conduct." *Comstock*, 805 F.2d at 1207. "Good faith in this context implies not only that Rule 41 was not knowingly and intentionally violated, but also that the officers did not act in reckless disregard or conscious indifference to whether it applied and was complied with." *Id.* Ferguson asserts that "[t]he [g]overnment knew that the plain language of Rule 41(b) limited the use of the NIT [w]arrant to computers located in the Eastern District of Virginia." Dkt. 50 at 27. However, "many [courts have held] that the magistrate judge had authority to issue the NIT warrant under the tracking device exception [to Rule 41(b)]." *United States v. Leal*, No. 1:17-cr-00046, slip op. at 11 (S.D. Tex. May 26, 2017) (Hanen, J.) When so many federal

8

judges have reached conflicting opinions as to the validity of the warrant, it cannot be said that the agents in question knew or should have known that the magistrate judge lacked authority. *See id.* at 12. Thus, the motion to suppress is DENIED because the good-faith exception applies.[3]

**B.      Motion to Dismiss**

Ferguson moves to dismiss the case because the FBI's decision to continue operating the Playpen site for two weeks constituted outrageous conduct. Dkt. 51. Despite that numerous defendants have made this same or similar argument, Ferguson points to no district court that has found the argument meritorious. *Id.*; *see also United States v. Tran*, 226 F. Supp. 3d 58, 63 (D. Mass. 2016) ("Every district court to consider this same argument has found it wanting.").

The Fifth Circuit has held that "[g]overnment misconduct does not mandate dismissal of an indictment unless it is 'so outrageous' that it violates the principle of 'fundamental fairness' under the due process clause of the Fifth Amendment. *United States v. Asibor*, 109 F.3d 1023, 1039 (5th Cir. 1997) (quoting *United States v. Johnson*, 68 F.3d 899, 902 (5th Cir. 1995)). "Such a violation will only be found in the rarest of circumstances." *Johnson*, 68 F.3d at 902. "Thus, a defendant who asserts the defense of outrageous government conduct has an extremely high burden of proof." *Asibor*, 109 F.3d at 1039. "Furthermore, in order to avail himself of the outrageous conduct defense, the defendant must show government overinvolvement combined with a passive role by the

---

[3]Because the court finds that the Rule 41 violation did not amount to a constitutional violation, the court need not consider whether the agents' good faith was objectively reasonable as required by *Leon*. *Comstock*, 805 F.2d at 1207. However, even applying the *Leon* good-faith analysis, the court still finds that the exception applies. The court agrees with Judge Hanen's analysis in *Leal*. Slip op. at 9–15. The agents' conduct was objectively reasonable, none of the circumstances requiring exclusion apply, and excluding the evidence has no deterrent value since Rule 41 has since been amended to undisputably give magistrate judges the precise authority at issue in this case. *Id.*

defendant. Where the court finds that the defendant is an active, willing participant in the criminal conduct that leads to his arrest, we will not find outrageous government conduct." *Id.*

Ferguson argues extensively that the government's conduct was outrageous, but does not address whether he was a passive or active participant. Dkt. 51. That, alone, justifies denial of his motion. *See Asibor*, 109 F.3d at 1039. Even if Ferguson did argue that he merely played a passive role, dismissal of the indictment would still not be appropriate. Ferguson accessed Playpen before the government took over the site. Dkt. 50-1 at 21. Thus, Ferguson cannot argue that he played a mere passive role while the government was overinvolved if he used the site before the government ever operated the site. As the Fifth Circuit has noted, the government cannot "instigate the criminal activity, provide the place, equipment, supplies and know-how, and run the entire operation with only meager assistance from the defendants without violating fundamental fairness." *United States v. Tobias*, 662 F.2d 381, 386 (5th Cir. Unit B 1981). Ferguson accessed the site with or without the government's involvement. Thus, he cannot logically maintain that he provided "meager assistance" or that the government's involvement was so outrageous that it was fundamentally unfair *to him*. Accordingly, Ferguson's motion to dismiss is DENIED.

## III. Conclusion

Because the court agrees with the majority of courts that the good-faith exception precludes the exclusion of the evidence, Ferguson's motion to suppress (Dkt. 50) is DENIED regardless of whether the NIT warrant violated Rule 41. Ferguson's motion to dismiss (Dkt. 51) is DENIED because he failed to meet his "extremely high burden of proof" to show outrageous government conduct. *Asibor*, 109 F.3d at 1039. Because this order precludes the need for a hearing, Ferguson's request for a hearing is DENIED as moot.

Signed at Houston, Texas on April 13, 2018.

_____
Gray H. Miller
United States District Judge